**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| IRIS A. TOLAND, | ) | No.  ED CV 07-1004-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 20, 2007, seeking review of the Commissioner's denial of her application for Supplemental Security Income.  The parties filed Consents to proceed before the undersigned Magistrate Judge on August 31, 2007, and September 7, 2007.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 8, 2008, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 23, 1955. [Administrative Record ("AR") at 56, 58, 272.] She has a high school education [AR at 25, 272], and has past relevant work experience as a waitress and a maid. [AR at 25, 65-69.]

On September 22, 2004, plaintiff filed her application for Supplemental Security Income payments, alleging that she has been disabled since March 1, 2002, due to an ovarian cyst, a prolapsed mitro valve, anxiety, panic attacks, bipolar disorder, and a hysterectomy with removal of a tumor. [AR at 18, 41, 48-49, 58-63, 92-93, 274-79, 282-84.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 39-54.] A hearing was held on October 3, 2006, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 269-87.] On November 15, 2006, the ALJ determined that plaintiff was not disabled. [AR at 15-26.] Plaintiff requested review of the hearing decision. [AR at 10-11.] When the Appeals Council denied plaintiff's request for review on June 15, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 5-8.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

1  as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

2  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

3  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

4  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

5

6                                              **IV.**

7                          **THE EVALUATION OF DISABILITY**

8            Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

9  to engage in any substantial gainful activity owing to a physical or mental impairment that is

10  expected to result in death or which has lasted or is expected to last for a continuous period of at

11  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

12

13  **A.       THE FIVE-STEP EVALUATION PROCESS**

14            The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

15  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

16  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

17  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

18  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

19  substantial gainful activity, the second step requires the Commissioner to determine whether the

20  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

21  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

22  If the claimant has a "severe" impairment or combination of impairments, the third step requires

23  the Commissioner to determine whether the impairment or combination of impairments meets or

24  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

25  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

26  If the claimant's impairment or combination of impairments does not meet or equal an impairment

27  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

28  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

1   and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

2   perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

3   prima facie case of disability is established.  The Commissioner then bears the burden of

4   establishing that the claimant is not disabled, because she can perform other substantial gainful

5   work available in the national economy.  The determination of this issue comprises the fifth and

6   final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

7   n.5; Drouin, 966 F.2d at 1257.

8

9   **B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

10          In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

11   gainful activity since the alleged onset date of the disability.  [AR at 20.]  At step two, the ALJ

12   concluded that plaintiff "has severe impairments in the musculoskeletal system and a very

13   questionable severe mental impairment."  [Id.]  At step three, the ALJ determined that plaintiff's

14   impairments do not meet or equal any of the impairments in the Listing.  [AR at 20.]  The ALJ

15   further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform medium

16   work.[2]  [AR at 20.]  Specifically, the ALJ found that plaintiff "is able to lift and/or carry 50 pounds

17   occasionally and 25 pounds frequently.  Out of an 8-hour workday, [plaintiff] is able to stand and/or

18   walk for 6 hours and sit for 6 hours.  Mentally, [plaintiff] is able to perform simple, repetitive, non-

19   public tasks."  [AR at 20.]  At step four, the ALJ concluded that plaintiff is capable of performing

20

21

22

23

24   _____

25   [1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
     Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26

27   [2]   Medium work is defined as work involving "lifting no more than 50 pounds at a time with
     frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c) and
     416.967(c).  If a plaintiff is able to perform medium work, he or she is also deemed able to perform
28   sedentary and light work.  See id.

her past relevant work as a maid.[3]  [AR at 25.]  Accordingly, the ALJ found plaintiff not disabled.[4]  [AR at 26.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) misrepresented the record with respect to plaintiff's mental health stability and failed to properly consider the mental health treatment notes from plaintiff's treating psychiatrist; (2) failed to properly consider the type, dosage, effectiveness, and side effects of plaintiff's medication; (3) failed to properly establish that plaintiff could perform her past relevant work or any other work in the local or national economy; and (4) failed to properly develop the record.  Joint Stipulation ("Joint Stip.") at 2-3.  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80

---

[3]   The ALJ indicated that plaintiff "is able to perform her past work as a maid cited by the State Agency vocational consultants as unskilled and light in exertion."  [AR at 25.]  The ALJ further indicated that plaintiff's past relevant work as a maid "does not require the performance of work-related activities precluded by her residual functional capacity."  [AR at 25.]

[4]   Although the ALJ found plaintiff not disabled at step four of the sequential evaluation process, and thus was not required to proceed to the fifth step of the evaluation process, the ALJ concluded that "[c]onsidering [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform."  [AR at 26.]

1 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing

2 Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).   Although the treating physician's

3 opinion is entitled to great deference, it is not necessarily conclusive as to the question of

4 disability.  Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

5      Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear

6 and convincing" reasons.  Lester, 81 F.3d at 830.  Where the treating physician's opinion is

7 contradicted by another physician, the ALJ may only reject the opinion of the treating physician

8 if the ALJ provides specific and legitimate reasons for doing so that are based on substantial

9 evidence in the record.  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d),

10 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice

11 of determination or decision for the weight [given to the] treating source's opinion"); Social Security

12 Ruling[5] 96-2p ("the notice of the determination or decision must contain specific reasons for the

13 weight given to the treating source's medical opinion, supported by the evidence in the case

14 record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

15 adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

16      An examining physician's opinion based on independent clinical findings that differ from the

17 findings of a treating physician may constitute substantial evidence.  Orn v. Astrue, 495 F.3d 625,

18 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ from

19 those offered by another physician and that are supported by substantial evidence, (citation

20 omitted) or (2) findings based on objective medical tests that the treating physician has not herself

21 considered." (citation omitted)).  However, even if an examining physician's opinion constitutes

22 substantial evidence, the treating physician's opinion is still entitled to deference.[6]  See id.; see

23                                _____

24      [5]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

25 "constitute Social Security Administration interpretations of the statute it administers and of its

26 own regulations," and are given deference "unless they are plainly erroneous or inconsistent with
the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

27      [6]   "In many cases, a treating source's medical opinion will be entitled to the greatest weight and

28 should be adopted, even if it does not meet the test for controlling weight."  SSR 96-2p.  In
determining what weight to accord the opinion of the treating physician, the ALJ is instructed to

1    also SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight

2    does not mean that the opinion is rejected).

3          Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial

4    evidence that justifies the rejection of the opinion of either an examining physician *or* a treating

5    physician."  Lester, 81 F.3d at 831 (emphasis in original).  The opinion of a non-examining

6    physician may serve as substantial evidence when it is consistent with other independent evidence

7    in the record.  Id. at 830-31.  "A report of a non-examining, non-treating physician should be

8    discounted and is not substantial evidence when contradicted by all other evidence in the record."

9    See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984) (quoting Millner v. Schweiker, 725

10   F.2d 243, 245 (4th Cir. 1984)).

11         Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for

12   disregarding the mental health treatment notes of plaintiff's treating psychiatrist, Dr. Imelda

13   Alfonso.  Joint Stip. at 3-4.  Plaintiff further asserts that the ALJ misrepresented the record with

14   respect to plaintiff's mental health stability.  Joint Stip. at 3-4, 7-8.  As discussed below, the Court

15   agrees with plaintiff.

16         For well over a year, Dr. Alfonso treated plaintiff for psychiatric problems and prescribed

17   medications.  [AR at 194-99, 244-61.]  On February 11, 2005, Dr. Alfonso performed an initial

18   "Adult Psychiatric Evaluation" of plaintiff.  In the evaluation, Dr. Alfonso noted that plaintiff's

19   mood/affect was depressed and anxious.  [AR at 261.]  Dr. Alfonso diagnosed plaintiff with bipolar

20   II disorder, panic disorder without agoraphobia, and personality disorder.  She assessed plaintiff

21   with a Global Assessment of Functioning ("GAF") score of 40.[7]  [Id.]  On April 22, 2005, Dr.

22

23   consider the following factors: length of the treatment relationship and frequency of examination;

24   nature and extent of the treatment relationship; the degree to which the opinion is supported by
     relevant medical evidence; consistency of the opinion with the record as a whole; specialization;

25   and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-
     (6), 416.927(d)(2)-(6).

26

27      [7]   A Global Assessment of Functioning score is the clinician's judgment of the individual's
     overall level of functioning.  It is rated with respect only to psychological, social, and occupational

28   functioning, without regard to impairments in functioning due to physical or environmental
     limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental

1   Alfonso completed a "Residual Psychiatric Disability" form and a "Mental Status Review" form

2   regarding plaintiff's mental condition.  [AR at 194-95.]  Dr. Alfonso found that plaintiff had a

3   moderate impairment in her ability to relate to others, a moderate restriction in her daily activities,

4   a moderate deterioration of personal habits, and a moderate constriction of interests.  Dr. Alfonso

5   concluded that plaintiff had moderate limitations in the ability to, among other things, understand,

6   carry out, and remember instructions, respond appropriately to supervision and co-workers, and

7   perform simple, complex, repetitive, or varied tasks.  [AR at 194.]  Dr. Alfonso noted on the Mental

8   Status Review form that plaintiff had no memory or orientation defects, delusions, hallucinations,

9   autistic or regressive behavior, inappropriateness of affect, blocking, illogical association of ideas,

10  or judgment defect.  [AR at 195.]

11          In the decision, in discounting the opinion of Dr. Alfonso, the ALJ concluded that (1) the

12  GAF score of 40 assigned to plaintiff by Dr. Alfonso was inconsistent with the treatment record;

13  (2) the check-the-box forms completed by Dr. Alfonso were conclusory; and (3) plaintiff's mental

14  condition was stable and well controlled on medication when plaintiff was compliant with treatment.

15  [AR at 23-24.]

16          First, the ALJ disregarded the GAF score of 40 assigned to plaintiff by Dr. Alfonso because

17  the mental status examination performed by Dr. Alfonso on February 11, 2005, "showed only

18  some symptoms of depression and anxiety, but was otherwise within normal limits[.]"  [AR at 23.]

19  The ALJ's conclusion that Dr. Alfonso's findings in the mental status examination were

20  inconsistent with her GAF assessment of 40 is not sufficient.  A GAF score is used by medical

21  professionals "'to consider psychological, social, and occupational functioning on a hypothetical

22  continuum of mental health-illness.'"  Sorenson v. Astrue, 2008 WL 1914746, at *18 (N.D. Iowa

23  Apr. 28, 2008) (citations omitted); see also DSM-IV at 34.  Thus, GAF scores cannot be directly

24  correlated to a plaintiff's mental status from day to day, just as the scores cannot be directly

25  correlated to the Social Security severity requirements in the Listings.  See Sorenson, 2008 WL

26  ————————————————

27  Disorders ("DSM-IV"), at 32 (4th Ed. 2000).  A GAF score in the range of 31 to 40 indicates some
    impairment in reality testing or communication, or major impairment in several areas, such as work
28  or school, family relations, judgment, thinking, or mood.  DSM-IV at 34.

1914746, at *18 ("Because the GAF score addresses functioning along the entire continuum of mental health, it is not reflective merely of a patient's mental status at the time of the examination."); see also Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01 (Aug. 21, 2000).

Here, defendant does not proffer any authority indicating that Dr. Alfonso's assessment of a GAF score of 40 and its implications may be discounted based on the ALJ's finding that the concurrent observations of plaintiff's mental status made by Dr. Alfonso were inconsistent with the GAF score of 40. Sorenson, 2008 WL 1914746, at *18 (finding that a physician's assessment of a GAF score of 40 was not inconsistent with concurrent findings by the same physician of appropriate affect and euthymic mood). Since a GAF score does not have a direct correlation to a plaintiff's mental status from day to day, the ALJ's rejection of the GAF score of 40 because it was inconsistent with the mental status examination does not suffice as a specific and legitimate reason for discounting Dr. Alfonso's findings. Nonetheless, in the initial psychiatric evaluation, Dr. Alfonso found that plaintiff's mood/affect was depressed and anxious and noted that plaintiff was "alienat[ed] from family members," which lends some support to Dr. Alfonso's GAF assessment.[8] [AR at 261.] Further, the ALJ's conclusion that the treatment record does not support a GAF score of 40 is insufficient, without more, to reject Dr. Alfonso's consistent treatment of plaintiff for depression, bipolar II disorder, panic disorder without agoraphobia, and mood swings. [AR at 268.] See Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (a low GAF score does not alone determine disability, but it is a piece of evidence to be considered with the rest of the record); see also Blake v. Astrue, 2008 WL 2224847, at *6 (D. Kan. May 27, 2008) (a GAF score of fifty or less may suggest an inability to keep a job). This is especially true where plaintiff was assigned a GAF score of 40 on more than one occasion,[9] and

---

[8]   See supra, fn 7.

[9]   Indeed, plaintiff was assigned a GAF score of 40 on two separate occasions, i.e., on January 21, 2005, and January 26, 2005, prior to Dr. Alfonso's assessment. [AR at 262.] Although these earlier GAF scores appear to have been assigned to plaintiff by a marriage and family therapist ("MFT"), which is not an "acceptable medical source" as defined in 20 C.F.R. §§ 404.1513(a), 416.913(a), the regulations permit an ALJ to consider the reports of "other sources,"

9

1  the record contains findings that the ALJ failed to consider, specifically, Dr. Alfonso's findings in

2  her December 8, 2006, letter (see discussion, infra, p. 14). [AR at 268.] In light of the foregoing,

3  the ALJ's assertion that Dr. Alfonso's findings were inconsistent with her assessment of a GAF

4  score of 40 is not a specific and legitimate reason to reject Dr. Alfonso's opinions.

5  Next, the ALJ gives "limited probative weight" to the Residual Psychiatric Disability and

6  Mental Status Review forms completed by Dr. Alfonso on April 22, 2005, because the forms were

7  conclusory and did not contain any explanation for the bases of the findings. [AR at 23-24.] That

8  the Residual Psychiatric Disability form and Mental Status Review form are check-the-box forms

9  can be a specific and legitimate reason for rejecting a physician's opinion when that opinion lacks

10 objective and clinical support. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (citing

11 Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized

12 medical opinions over check-off reports)).  In this case, however, the forms are not the totality of

13 information provided by Dr. Alfonso.  While Dr. Alfonso did not include a specific explanation for

14 each of the findings in the forms, Dr. Alfonso performed a complete psychiatric evaluation of

15 plaintiff on February 11, 2005 -- only two months prior to the completion of the forms -- in which

16 Dr. Alfonso diagnosed plaintiff with bipolar II disorder, panic disorder without agoraphobia,

17 personality disorder, and assessed plaintiff with a GAF score of 40. [AR at 260-61.] Additionally,

18 Dr. Alfonso continued to treat plaintiff on a regular basis for an extended period and prescribed

19 medications to plaintiff as evidenced by Dr. Alfonso's treatment notes contained in the record. [AR

20 at 196-99, 247-59.] See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii) (weight accorded

21 to a treating physician's opinion dependent on length of the treatment relationship, frequency of

22 visits, and nature and extent of treatment received).  In fact, Dr. Alfonso saw plaintiff for a

23 _____

24 including nurse practitioners, physicians' assistants, and therapists.  See 20 C.F.R. §§
    404.1513(d)(1), 416.913(d)(1).  While the ALJ indicates that such a low GAF score may be
25 attributed to the influence of drug and alcohol abuse, drug and alcohol dependence are noted only
    in the January 26, 2005, diagnosis, and nowhere else in the record. [AR at 23.] In fact, plaintiff
26 denied any use of alcohol or drugs at the psychiatric and internal medicine consultative
    examinations, the February 11, 2005, initial psychiatric evaluation, and at the hearing. [AR at 129,
27 133, 280-81.]  The lack of any evidence supporting the one-time comment of a drug and alcohol
    problem throws into question the validity of the statement and the ALJ's reliance on it.
28

medication visit on March 11, 2005, a month after her initial psychiatric evaluation of plaintiff, but prior to her completion of the April 22, 2005, forms.  [AR at 198.]  In the interdisciplinary note from the March 11, 2005, medication visit, Dr. Alfonso noted plaintiff's claim that she was suffering from increased mood swings and found that plaintiff was "still not stable."  [AR at 198.]  Notably, Dr. Alfonso also saw plaintiff for a medication visit on April 22, 2005 -- the same day that Dr. Alfonso completed the Residual Psychiatric Disability form and the Mental Status Review form -- during which plaintiff indicated that certain prescribed medications, i.e., Zyprexa and Lexapro,[10] gave her "bad dreams," and complained of having increased mood swings and panic attacks.  [AR at 196.] Dr. Alfonso discontinued plaintiff's Zyprexa and Lexapro medications and noted that "she's still unstable [and] needs adjustments in medications."  [Id.]  Based on the length of the treatment and Dr. Alfonso's experience with plaintiff, Dr. Alfonso had the broadest range of knowledge regarding plaintiff's medical condition, which is supported by the record.  See Smolen, 80 F.3d at 1279; see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (Treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."); Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified . . . to form an overall conclusion as to functional capacities and limitations, as well as prescribe or approve the overall course of treatment.").  Given that Dr. Alfonso examined plaintiff and completed a psychiatric evaluation that included her clinical findings less than two months before completing the Residual Psychiatric Disability and Mental Status Review forms, diagnosed plaintiff with, inter alia, bipolar II disorder and panic disorder, and treated plaintiff for over a year, the ALJ's conclusion that Dr. Alfonso's findings in the forms were conclusory and lacked sufficient explanation is not an

---

[10]   Zyprexa and Lexapro are used in the treatment of certain mental/mood conditions. http://www.webmd.com/drugs/index-drugs.aspx (search "Find A Drug" by drug name; then enter the name of the drug; then select the appropriate hyperlink if there are multiple forms of the drug; then follow the "Uses" tab).

1  accurate reflection of the treatment record as a whole, and thus is not a specific and legitimate

2  reason to reject those findings.[11]

3      Moreover, assuming that the Residual Psychiatric Disability and Mental Status Review forms

4  completed by Dr. Alfonso were inadequate, the ALJ had a duty to further develop the record in

5  order to determine the basis of Dr. Alfonso's findings.  See Tonapetyan v. Halter, 242 F.3d 1144,

6  1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate

7  to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate

8  inquiry.'") (quoting Smolen, 80 F.3d at 1288); see also Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir.

9  1999) (as amended) (conclusory, check-the-box form is "inadequate").  In making a determination

10  of disability, the ALJ must develop the record and interpret the medical evidence.  See Brown v.

11  Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (the ALJ has a special duty to fully and fairly develop

12  the record and to assure that the plaintiff's interests are considered even when the plaintiff is

13  represented by counsel); see also Lewin v. Schweiker, 654 F.2d 631, 634 (9th Cir. 1981)

14  (recognizing the need for full and detailed findings of facts essential to the ALJ's conclusion).  If

15  evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ

16  is required to recontact the medical source to determine if additional needed information is readily

17  available.  See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or

18  clarification from your medical source when the report from your medical source contains a conflict

19  or ambiguity that must be resolved, the report does not contain all the necessary information, or

20  does not appear to be based on medically acceptable clinical and laboratory diagnostic

21  techniques.").  As a general rule, the record will be considered "inadequate" or "ambiguous" when

22  a medical source has provided a medical opinion that is not supported by the evidence.  See

23  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor

24

_____

25      [11]  In the decision, the ALJ expressly accepted and gave "significant weight" to the

26  reconsideration determination findings and opinions of the State Agency review examiners
    because the findings and opinions were consistent with the overall medical evidence.  [AR at 22-

27  23.]  The Court notes that State Agency psychiatrist Dr. M. Becraft (whose opinion the ALJ
    unequivocally accepted in the decision) assigned "controlling weight" to Dr. Alfonso's April 22,

28  2005, findings.  [AR at 219.]

1    if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.")

2    (citation omitted); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).   The

3    responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the

4    claimant's burden.   See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). "The ALJ may

5    discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting

6    questions to the claimant's physicians, continuing the hearing, or keeping the record open after

7    the hearing to allow supplementation of the record." Tonapetyan, 242 F.3d at 1150.   Here, the

8    record was not sufficiently developed to the extent the ALJ believed that the Residual Psychiatric

9    Disability and Mental Status Review forms did not contain all the necessary information, or did not

10   appear to be based on medically acceptable clinical and laboratory diagnostic techniques.   For

11   instance, in light of the ALJ's expressed skepticism toward the findings of Dr. Alfonso contained

12   in the forms, it would have required little effort on his part to recontact Dr. Alfonso to determine the

13   basis of her opinion.   The ALJ should recontact Dr. Alfonso on remand in order to resolve any

14   perceived inadequacies and fully develop the record.   See 20 C.F.R. §§ 404.1519a(b)(4),

15   416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or

16   insufficiency," the ALJ should resolve the inconsistency by recontacting the medical source).

17        Finally, the ALJ discounted Dr. Alfonso's opinion based on his conclusion that plaintiff's

18   mental health was stable and well controlled when plaintiff was compliant with treatment. [AR at

19   23-24.]   The ALJ's selective reliance on particular findings of Dr. Alfonso to support his non-

20   disability determination, without providing sufficient explanation for such reliance, and his failure

21   to accurately summarize Dr. Alfonso's findings, was error.   The ALJ may not point to and discuss

22   only those portions of the treatment record that favor his ultimate conclusion.   See Gallant, 753

23   F.2d at 1456 (error for an ALJ to ignore or misstate the competent evidence in the record in order

24   to justify his conclusion); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (while the

25   ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot

26   simply selectively choose evidence in the record that supports his conclusions); Whitney v.

27   Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not

28   ignore evidence that suggests an opposite conclusion.") (citation omitted); Day v. Weinberger, 522

1  F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating

2  a specific quantum of supporting evidence").  The ALJ's conclusion that plaintiff's mental health

3  was stable and well controlled ignores relevant evidence in the record.  For more than one year

4  after Dr. Alfonso performed the initial psychiatric evaluation of plaintiff on February 11, 2005, Dr.

5  Alfonso saw plaintiff regularly for medication visits, in which she noted plaintiff's

6  symptoms/complaints, her response to medications, her compliance with the medication plan, and

7  the side effects of plaintiff's medications.  [AR at 196-99, 244-59.]  Dr. Alfonso prescribed

8  medication to plaintiff based on her evaluation of plaintiff during the medication visits.  [Id.]

9  Although on certain occasions Dr. Alfonso noted that plaintiff's medication compliance was "fair"

10  and her condition was "stable" [AR at 247, 250, 252, 253], the record reveals numerous instances

11  in which plaintiff's compliance to the medication plan was "fair," but her condition nevertheless

12  remained "unstable."  On January 6, 2006, and February 3, 2006, when plaintiff's medication

13  compliance was noted as "fair," her condition was noted as "unstable" and her dosage of Prozac[12]

14  was increased.  [AR at 256-57.]  Further, on March 11, 2005, April 22, 2005, September 30, 2005,

15  and July 28, 2006, plaintiff's condition was noted as not stable.  [AR at 196, 198, 249, 259.]  In

16  addition, the ALJ completely ignored Dr. Alfonso's findings in her letter dated December 8, 2006.

17  In the letter, Dr. Alfonso noted that plaintiff was "having more depressive episodes these past few

18  months."  [AR at 268.]  Specifically, Dr. Alfonso stated that plaintiff was having "increasing

19  depression with low energy and lack of motivation to do anything," "increasing suicidal thoughts

20  with no plan or intent," "feelings of worthlessness [a]nd hopelessness," "increasing panic attacks,"

21  and "increasing mood swings."  [AR at 268.]  The ALJ did not fully discuss Dr. Alfonso's findings

22  concerning plaintiff's condition and did not consider Dr. Alfonso's findings in her December 8,

23

24

25

26  _____

27     [12]   Prozac is used in the treatment of depression and anxiety.  http://www.webmd.com/drugs/
index-drugs.aspx (search "Find A Drug" by drug name; then enter the name of the drug; then
28  select the appropriate hyperlink if there are multiple forms of the drug; then follow the "Uses" tab).

1    2006, letter.[13]  Thus, the ALJ erred by failing to properly address "competent evidence" in the

2    record.  For the foregoing reasons, remand is warranted.[14]

3

4                                    **VI.**

5                 **REMAND FOR FURTHER PROCEEDINGS**

6          As a general rule, remand is warranted where additional administrative proceedings could

7    remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

8    Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

9    In this case, remand is appropriate to properly consider Dr. Alfonso's findings.  The ALJ is

10   instructed to take whatever further action is deemed appropriate and consistent with this decision.

11         Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

12   (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

13   for further proceedings consistent with this Memorandum Opinion.

14

15   DATED: October 20, 2008

                                         _Paul L. Abrams_

16                                    PAUL L. ABRAMS
                               UNITED STATES MAGISTRATE JUDGE

17

18      [13]  The ALJ's failure to completely consider and address the opinion of Dr. Alfonso undercuts his

19 determination of plaintiff's RFC.  The RFC assessment must be made "based on all the relevant evidence in [the] case record."  20 C.F.R. §§ 404.1545, 416.945.  Examples of the types of evidence

20 required to be considered in making an RFC assessment include medical history, medical signs, laboratory findings, recorded observations, and medical source statements.  See SSR 96-8p.  The RFC

21 assessment must always consider and address medical source opinions, and if the assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  See id.

22 "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s) including [claimant's]

23 symptoms, diagnosis and prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  In determining plaintiff's mental residual functional capacity, the ALJ found that plaintiff could perform simple, repetitive,

24 non-public tasks.  [AR at 20.]  No other mental limitations were included by the ALJ in plaintiff's RFC assessment.  Given Dr. Alfonso's findings that plaintiff's condition was unstable at times in conjunction

25 with Dr. Alfonso's later statements that plaintiff's mental limitations were increasing, the ALJ erred by

26 failing to fully consider Dr. Alfonso's findings in determining plaintiff's RFC.  [AR at 194, 268.]

27      [14]  As the ALJ's consideration on remand of Dr. Alfonso's findings may impact on the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion not to address

28 those issues in this Order.